AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)  ☐ Original  ☐ Duplicate Original

| LODGED<br>CLERK, U.S. DISTRICT COURT<br>12/14/2021<br>CENTRAL DISTRICT OF CALIFORNIA<br>BY: \_\_\_DTA\_\_\_ DEPUTY | | FILED<br>CLERK, U.S. DISTRICT COURT<br>12/14/2021<br>CENTRAL DISTRICT OF CALIFORNIA<br>BY: \_\_\_JD\_\_\_ DEPUTY |

# UNITED STATES DISTRICT COURT
for the
Central District of California

UNITED STATES OF AMERICA,

v.

VICTOR SANCHEZ,

Defendant.

Case No. 8:21-mj-00828-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about **December 13, 2021**, in the County of Orange, in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession with Intent to Distribute Methamphetamine |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/Jessica E. Mendez
*Complainant's signature*

Jessica E. Mendez, Special Agent (DEA)
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: December 14, 2021

*Karen E. Scott*
*Judge's signature*

City and state: Santa Ana, California

Karen E. Scott, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, Jessica E. Mendez, being duly sworn, declare and state as follows:

**INTRODUCTION**

1. I am an investigative and law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), and I am empowered by law to conduct investigations of, and to make arrests for, the offenses enumerated in Title 18, United States Code, Section 2516. I am currently a Special Agent ("SA") with the Drug Enforcement Administration ("DEA"), Los Angeles Field Division, Orange County District Office ("OCDO") and have been employed in this capacity since July 2017.

2. During the course of my employment, I have received comprehensive, formal instruction on such topics as drug identification; money laundering techniques; patterns of drug trafficking; complex conspiracies; the exploitation of narcotics traffickers' telecommunications devices; criminal law; surveillance; and other investigative techniques. I have initiated and assisted in investigations into the unlawful importation, manufacture, possession with intent to distribute, and distribution of narcotics (including cocaine, heroin, and methamphetamine, the laundering of narcotics proceeds, and conspiracies associated with narcotics offenses. In conducting these investigations, I have utilized a variety of investigative techniques and resources, including but not limited to such techniques as surveillance, confidential sources, search

warrants, telephone toll analysis, undercover operations, and wire intercept communications analysis in Title III and California State wiretap investigations.

## PURPOSE OF AFFIDAVIT

3. This affidavit is made in support of a criminal complaint for **VICTOR SANCHEZ** ("SANCHEZ") for a violation of Title 21, United States Code, Section 841(a)(1) (Possession with Intent to Distribute Methamphetamine).

4. Unless otherwise stated, the facts set forth in this affidavit are based upon my personal observations; my training and experience; oral and written reports about this investigation; and physical surveillance conducted by federal agents or local law enforcement agencies, which has been reported to me either directly or indirectly. Unless otherwise noted, when I assert that a statement was made, I have either heard the statement directly or the statement was reported to me by another law enforcement officer, either directly or in a written report. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrant, and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversation and statements described in this affidavit are related in substance and in part only.

**SUMMARY OF PROBABLE CAUSE**

5.    In December of 2021, I received information from a Confidential Source ("CS1") regarding an unknown male (UM), later identified as **VICTOR SANCHEZ** calling from telephone number 714-809-1114, who was looking to sell approximately 30 pounds of methamphetamine at $1,300 per pound.  At the direction of case agents, the CS1 arranged to meet with another CS ("CS2") and SANCHEZ in order to complete the transaction with SANCHEZ.  On December 13, 2021, the two Confidential Sources (collectively, "the CSs")[1] met with SANCHEZ and confirmed that SANCHEZ had approximately 30 pounds of methamphetamine in the trunk of the vehicle that SANCHEZ was driving.  During a subsequent stop of SANCHEZ's vehicle, law enforcement offers and agents found approximately 30 pounds of suspected methamphetamine in the trunk of the vehicle.

**STATEMENT OF PROBABLE CAUSE**

6.    Based on my review of law enforcement reports, conversations with other law enforcement officers, and my own knowledge of the investigation, I am aware of the following:

   A.    **DEA Confidential Source Meets with Defendant SANCHEZ**

7.    In December 2021, CS1, a Confidential Source working with DEA, informed me about a drug-trafficking organization ("DTO") operating in the greater Los Angeles area.  Throughout

---

[1] Both of the Confidential Sources are established sources who work with DEA and LA-IMPACT.  They receive monetary compensation for their work, and they have also received adjustment to their immigration status.  To my knowledge, neither CS has criminal history (apart from potential traffic infractions).

the investigation, CS1 communicated with target subject SANCHEZ, in Spanish via WhatsApp and telephone.  CS1 recorded phone calls and text messages, which I later reviewed and have translated, in substance and in summary, into English.

       8.   On December 13, 2021, at approximately 12:13 p.m., SANCHEZ contacted CS1 and told CS1 that he received CS1's number from a Mexico contact regarding a deal for 30 pounds of methamphetamine.  CS1 stated that the CS1 had someone who was interested.  SANCHEZ told CS1 that he would be the one taking care of CS1 and asked CS1 to send him CS1's location.  SANCHEZ stated that he was coming from the Pasadena, CA area and would be a while.

       9.   At approximately 1:24 p.m., SANCHEZ text CS1 via WhatsApp and asked the CS1 to provide an address where they could meet to complete the transaction.

       10.   At approximately 1:30 p.m., DEA surveillance units set up surveillance at an in the vicinity of a Target parking lot located at 1441 W 17th St., in the city of Santa Ana, CA in anticipation of SANCHEZ's arrival.

       11.   At approximately 1:30 p.m., at the direction of case agents, CS1 sent SANCHEZ a text via WhatsApp, stating 17th and Bristol.

       12.   At approximately 1:36 p.m., SANCHEZ texted CS1 and asked if CS1 would have the "pink slips" (referring to money) on hand, otherwise he could not give them (drugs) to CS1.

13. At approximately 1:38 p.m., at the direction of case agents, CS1 said, yes and sent SANCHEZ the following address: 1441 W 17th St., Santa Ana, CA.

14. At approximately 1:41 p.m., SANCHEZ asked CS1 if the location was a Target. At the direction of case agents, CS1 told SANCHEZ that he was at a Target to get some coffee with a friend (CS2). SANCHEZ said he would meet CS1 there to have one there as well.

15. At approximately 1:452 p.m., at the direction of case agents, CS1 contacted SANCHEZ and asked how long before he arrived.

16. At approximately 1:45 p.m., SANCHEZ text CS1 and stated that there was traffic and 2:30 (possibly referring to 2:30 p.m. arrival time).

17. At approximately 2:20 p.m., SANCHEZ contacted CS1 and stated that he was approximately 10 minutes away and would arrive in a black Lexus.

18. At approximately 2:33 p.m., surveillance units observed a black Lexus IS250 bearing California license plate 6CZF842 through the lot, which is registered to a Griselda Sanchez Luna, who SANCHEZ later identified as his sister.

19. At approximately 2:34, SANCHEZ contacted CS1 and stated he was in the lot by the Target and Smart & Final.

20. At approximately 2:35 p.m., surveillance units observed a black Lexus IS250 park next to the CS's vehicle. Surveillance units observed CS1 and CS2 exit the CSs vehicle and walk towards SANCHEZ's vehicle.

21. At approximately 2:36 p.m., SANCHEZ exited the vehicle and walked towards the back of the vehicle. Surveillance units observed SANCHEZ and the CSs walk to the back of the vehicle, and SANCHEZ opened the trunk.

22. At approximately 2:38 p.m., the CSs and SANCHEZ walked back to their respective vehicles and exited the lot.

### B. CHP Stop of Defendant SANCHEZ's Vehicle

23. At approximately 2:42 p.m., California Highway Patrol ("CHP") Officers Jay Sides and Eli Granado conducted a stop of SANCHEZ's vehicle. DEA Agent Matthew Sugiyama talked with one or more of the CHP officers after the stop, and he provided me with a summary of what he learned from the CHP officers.

24. During the course of the stop, the CHP officers deployed a drug-sniffing K-9 dog "Timo," which positively alerted for the presence of narcotics. During the stop, the CHP officers found approximately 30 pounds of suspected methamphetamine in the trunk of SANCHEZ's vehicle. At the stop, SANCHEZ advised the CHP officers that everything in the car belonged to him.

25. At approximately 3:10 p.m., Agent Sugiyama approached the scene to take pictures and SANCHEZ stated everything in the vehicle was his.

26. At approximately 4:31 p.m., I read SANCHEZ his Miranda rights, in Spanish, directly from a DEA-13A. At this time, SANCHEZ declined to answer any questions. After declining to answer any questions, however, SANCHEZ spontaneously said that everything in the car belonged to him.

6

C. **Debrief of DEA Confidential Sources**

27. On December 13, 2021, I debriefed CS1 and CS2 concerning the events on that same date. CS1 stated that SANCHEZ contacted CS1 and stated that he was calling on behalf of "Licensiada" and would be the one helping CS1 out that day. SANCHEZ told CS1 he was coming from the Pasadena area and would not arrive to the Santa Ana area until around 2:00 p.m.

28. At approximately 2:20 p.m., SANCHEZ contacted CS1 and said he was about 10 minutes away.

29. According to CS1 and CS2, at approximately 2:33 p.m., SANCHEZ contacted CS1 and stated he was in the lot. CS1 exited the CSs vehicle and met with SANCHEZ. During the meet, CS1 stated that SANCHEZ asked for them to move to a more secluded location. CS1 told SANCHEZ they just wanted to talk and CS1 wanted to introduce CS2. At this time, CS2 approached SANCHEZ. CS2 asked if he could just take a look at the stuff (referring to narcotics) and SANCHEZ said okay. At this time, SANCHEZ opened the trunk of his vehicle and showed the CSs a black trash bag located in the trunk. CS2 reached into the vehicle and looked inside the trash bag, where the CS2 saw multiple bags of methamphetamine in clear Ziploc bags. The CS2 said okay, SANCHEZ closed the trunk, and the CSs and SANCHEZ got back in their respective vehicles and exited the lot.

## CONCLUSION

30. Based on the foregoing, I believe that probable cause exists to believe that VICTOR SANCHEZ has committed a violation

7

of Title 21, United States Code, Section 841(a)(1): Possession with Intent to Distribute Methamphetamine.

/s/
Jessica E. Mendez,
Special Agent
Drug Enforcement Administration

Attested to by the applicant by telephone in accordance with the requirements of Fed. R. Crim. P. 4.1 on this day, December 14th, 2021.

*Karen E. Scott*

KAREN E. SCOTT
UNITED STATES MAGISTRATE JUDGE

8